UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TERRY LaCROIX,

    Plaintiff,

    v.

RON NEAL, et al.,

    Defendants.

CAUSE NO. 3:22-CV-984-JD-MGG

OPINION AND ORDER

Terry LaCroix, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. LaCroix is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. LaCroix is an inmate at Indiana State Prison ("ISP"). His complaint is in places difficult to follow. As best as can be discerned, he claims that on or about December 31, 2020, he was in his cell after not having slept for three days. He claims he

heard gun shots, and also heard inmates and/or correctional staff talking about shooting his brother and his ex-girlfriend. He states that another inmate told him his ex-girlfriend's sister was "running through the parking lot to save me." He states that he "started to freak out" thinking that someone was going to kill his family members and so he "grab[bed] at" a correctional officer who had entered his cell to escort him to another area of the prison. He was sprayed with mace and another officer "ripped [his] arms through the food slot" to handcuff him. He was then led downstairs by several officers, but he feared they were going to kill him so he "started to struggle" and then "hooked" one of the officers "by the legs," causing him to fall. Several more officers then arrived to subdue him. He claims that they kicked, punched, and elbowed him for about five minutes, after which they were able to secure him with leg shackles. He told one of the officers, "You killed my brother you killed Tonya. If you hurt . . . my family you are done." He claims that as a result of this incident he had lacerations and "emotional and mental injuries."

He was then taken to the medical unit. As best as can be discerned, a psychiatric doctor ordered that he be held for observation. He claims that while in observation he "heard inmates in the stairway whistling" and threatening him, so he "ripped off" the clothing he was wearing and "was ready to fight." He claims that unidentified individuals "messed with" his food while he was on psychiatric observation. He claims an officer came to his cell and acted like she was going to shoot him, but then did not. He claims another officer made a comment to him about a fellow inmate which Mr. LaCroix felt was racist. When he complained, he thought the officer was going to try to

2

shoot him, but "nothing ended up happening." Based on these events, he sues 23 different prison staff members, including the Warden, Assistant Warden, the officers who subdued him, and the officers who allegedly threatened him and his family. He seeks $5 million in damages for physical and emotional suffering, criminal charges to be brought against the defendants, and other relief.

Even giving Mr. LaCroix the inferences to which he is entitled at this stage, the court finds the bulk of his allegations in the realm of "fantastic" or "delusional." *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). This includes his allegations that officers shot at him or his family members or threatened to shoot him or his family members. It can be discerned that Mr. LaCroix was not thinking clearly during these events and may have been having some type of psychotic break. To the extent he is trying to initiate criminal charges against any of the defendants, he has no authority to do so. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998) ("[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General."). His allegation that someone tampered with his food while he was on psychiatric observation may not be delusional, but he does not allege who did this or how the food was tampered with for the court to plausibly infer a constitutional violation. *See Iqbal*, 556 U.S. at 678.

Stripping away those allegations, what remains is his claim that officers wrongfully injured him when escorting him to another area of the prison.[1] Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.*

Based on the circumstances Mr. LaCroix describes, it is evident that the officers were faced with a difficult situation involving an unruly and potentially dangerous inmate. It can be discerned that the officers were trying to escort Mr. LaCroix to another area of the prison, but he was not cooperating. "Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). Not only that, he acknowledges he was physically aggressive toward the officers during these events, "struggl[ing]" against them, "grab[bing]" at one officer, and "hook[ing] the legs" of another. He continued to be physically aggressive even after being sprayed with mace. From his own account, once he was subdued and shackled, the use of force ceased. Based on what he has alleged, the court

---

[1] He also names a nurse as a defendant, but he does not include factual allegations about the medical care he received for the court to plausibly infer that a member of the medical staff was deliberately indifferent to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

4

cannot plausibly infer that the officers used force maliciously and sadistically to cause harm, rather than in a good-faith effort to restore order in the prison. *Hendrickson*, 589 F.3d at 890; *see also McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (a plaintiff can plead himself out of court by including allegations showing he is not entitled to relief).

As to the Warden and other high-ranking prison officials, they are not mentioned by name in the narrative section, and it appears Mr. LaCroix is trying to hold them liable for damages solely because of their positions. Liability under 42 U.S.C. § 1983 is based on personal responsibility, however, and these officials cannot be held liable solely because they oversee operations at the prison or supervise other prison staff. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). He has not stated a plausible constitutional claim against these defendants.

Therefore, the complaint does not state a claim upon which relief can be granted. In the interest of justice, the court will allow him an opportunity to amend his complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim based on these events, consistent with the allegations he has already made under penalty of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **February 13, 2023**, to file an amended complaint if he so chooses; and

(2) CAUTIONS him that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED on January 10, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT